Damaso Rivera Fonseca. Case number 16-15521. Mr. Katzeff. Yes, may I please the court. Mark Katzeff representing Damaso Fonseca. In this case the district court erred in denying the defendant's motion to suppress the testimonial evidence and also his motion for new trial on the same grounds. The police in this case violated the defendant's invocation of his right to remain silent under the Fifth Amendment in several instances and also as a totality of the circumstances. Can I ask you one question Mr. Katzeff before you get into the the substance of your argument. Did his girlfriend testify at either the suppression hearing or the trial? I'm not sure your honor I don't think she did but I will have to check that. Okay, no problem. Go right ahead. But in the first instance when the defendant was in his holding cell with agent Brady and agent Brady asked him whether he wished to speak and whether he wished to have an attorney present he said stop right there. At that point instead of stopping right there agent Brady continued to speak with the defendant and ask him questions. That was clearly a violation of his right of invocation to remain silent. Well two things. At that point had she finished reading him his rights or was she in the middle of reciting those rights? I believe she had but what's interesting about this case is that the way that the series of events unfolded as a factual matter clearly show the egregious behavior of the police. When the defendant was then next taken from his holding cell to the Sally Port to be transported to the jail he was confronted with the sight of Brigitte Newman whom you just mentioned who was sitting in a police car at that precise moment in time in near vicinity of where he was being placed in the police car. The appellant contends that this structured was designed to elicit statements made by the defendant and in fact he did. Didn't the court find that that was not the case? There's nothing improper with the manner which the police conducted themselves? That's correct. That's correct and isn't the standard of review much higher? It is much higher your honor yes but our contention is that that burden is met in this case. Is there any evidence that the police had structured the situation in such a way to have the girlfriend present there? No but even if they had not structured it it did place the defendant in a highly vulnerable position and he did make a statement at that point after he had stated to agent Brady in the holding cell stop right there. He made a statement he said it's all mine let her go. How much time elapsed between the agent's statements about the process and when he made the statement that you're referring to? It's my understanding that he explained the process to the defendant in the holding cell and then this situation where he saw his girlfriend occurred downstairs but to go back to your point the second instance which I didn't mention in which his right to was when after he had stated stop right there agent Brady then proceeded to explain the booking process to him and explain about going to jail and this was another situation which clearly was designed it's our contention of course it was designed to elicit statements made by the defendant. Let's assume that the agent went beyond the pale and continuing to talk to him after he said stop right there to try to segment this into portions at that moment in time there were no statements right? Correct. Okay so the first the first statement is when he sees his girlfriend when he goes downstairs and sees her in another car. Then the first inculpatory statement. And then there's the one that follows after that. You want to talk about the second one? Absolutely so when he was placed in the vehicle to be taken to the jail he was with agent Brady and officer Littlefield I believe at that point and they continued to at least speak in some fashion to him and it's during that ride to the jail that he says I'd rather have it's better to have a gun than to be then not to have a gun and be dead. So each of these situations the appellant would contend is a was a violation of his right to remain silent and it's the conduct of the police and we can look at the totality of the circumstances. From the holding cell when he said stop right there when agent Brady said to him would you like counsel and then agent Brady continued to speak with him and then agent Brady continued to speak about the booking process and the jail and this issue is dealt with with the case of Johnson which is in my brief and then he was taken down to the Sally Port where he was confronted with the side of his girlfriend exactly at that same moment in time in the near vicinity of where he was and he made his first inculpatory statement and then he was then taken to the jail and engaged in further conversation by the police officers the one police officer does say in his testimony that it was a stream of consciousness but I I'm not sure that that's the case when you read the testimony it clearly wasn't a stream of consciousness there were statements made by the police in the Johnson wasn't the statement by the officer intended to elicit a response isn't that the distinction here you I haven't seen any indication that those initial statements by the officers were intended to elicit responses explaining what the booking process is or that he's going to jail it's it's our contention that those that explanation by the police officer about the booking process and about going to jail is designed to elicit a solicitor response a police doesn't have to explain that to him what if he asked the question where are we going he's been arrested what if he asked the question where are we going in the officer I think the answer is very clear there should be no answer if the defendant has invoked his right to silence there should be no statement made by the police whatsoever there should be no statement made by the police whatsoever and I and we would contend that when you look at the totality of the circumstances from the holding cell all the way to the right to the jail the entire time the police were were present with the defendant was designed on each occasion to elicit statements which unfortunately the defendant made on this with regard to the second statement mr. Katz if what what do you think was the most egregious statement question comment made by the statement I I think your honor you have to look and and I hate not to answer your question to give you the answer that you're you're maybe looking for but you have to look at the totality of everything together because when you keep probing at some point a person is going to say something or they may say may say something but I don't disagree with you I think you have to look at the you can't isolate one thing from another but if they had remained silent in the car and said nothing to him on the way to or at the federal detention center you'd be in a different position very different right so what was it that they said as part of the totality of the circumstances between the first statement and the second statement do you remember what the record shows what the officers mentioned or so in other words between between the holding port and the drive to the jail right at the Sally port that's when he says it's mine let her go or something like that to that effect right and then there's a second statement and my question is do you recall yes I think I think I think the most egregious statement was by agent Brady or officer Littlefield I don't recall but they did say to him at that point they told him details about the investigation they mentioned to him they told him about what Brigitte Newman had said in the Walgreens to the store manager and that's a very very clear violation of his right to remain silent when you know after a defendant has stated that stop right there agents begin discussing the details of the investigation with him and and I also think that this case is not subject to a successful harmless error analysis because if you take away those two case you have a case that is based upon what one could argue is circumstantial evidence and I think the only remedy in this case is to reverse the judgment and sentence and remanded for a new trial so that we can proceed with a trial based upon evidence that is or should be admissible under our laws all right mr. mr. Shadley morning and may it please the court Fritz Shadley on behalf of the United States before getting into any argument I'd like to clarify a few facts based on the discussion that just occurred and to start that off I'd like to point to one exhibit that's particularly clarifying regarding the interrogation well not interrogation the conversation rather that was had in the interview room at the Police Department about a week or a week and a half ago there was a request from the clerk that the government submit the exhibits from the motion to suppress hearing those included several videos and audio files the government submitted those exhibits about a week and a half ago and included in that is a video of the interrogation that occurred at the police station that's exhibit 4 to the motion to suppress hearing this is but this is the interrogation after the spontaneous statements no this is the conversation in the interview room where they come in they give him the Miranda warnings midway through and this is another clarification midway through the Miranda warnings the defendant makes a statement that he'd like to stop there's some clarifying questions by the officer he then says yeah I'd like a lawyer so then she stops with the mid-flow of the Miranda and you can see that in the video and then provides him a brief description of what would happen next essentially and she explained in her testimony at the motion to suppress hearing that that was just to be respectful and fair to the defendants in other words not take him somewhere without telling him where they were going next so that before deciding I would urge the court to view that video because it is I think everything we would want out of law enforcement in that circumstance it was cordial but not overly so they weren't acting in a way as the concern articulated in Johnson that they may be trying to play the good guy she did the interview she did it respectfully he invoked she gave a brief summation gave a brief summation of what would happen next and then after that the defendant and the officers go to leave the interview room and go to the holding cell as they're walking out the defendant begins to joke with the interviewer with officer agent Brady the defendant says hey was that there's a the cameras looking through through a one-way mirror and the defendant says that you guys out there videotaping me before and they're like oh no that wasn't us he says I was just joking around with you and does a little shimmy like he had been messing with the people in the camera so he was he was it was a light-hearted joking exchange at that point then the the officers and the agents take the defendant to the holding cell and then he's taken later to the Sally port and then to the car to be transported to FTC at which time he sees his girlfriend Bridget Newman now at the suppression hearing and their argument defense counsel said that that time period was not more than an hour between the time when there was the invocation the explanation of the criminal process that would follow and then the transportation to the interview to the holding room and then the transportation to the Sally port then the transportation down to the area where Bridget Newman was seen as your honors mentioned the district court found that that encounter was in no way arranged and the district court made a finding that there was no evidence or no testimony showing that that was arranged so that was not an effort at all by the agents or law enforcement officers to to bring Bridget Newman there and in order to coerce a confession or a statement on behalf of the defendant so our contention with regard to that exchange there then is the government can proceed can succeed in one of two interrupt you for a second you said the defense argued at the suppression hearing that the time span was no more than an hour that's correct your honor you think that estimate was correct so the record is not entirely clear your honor there are there time stamps on any of the any of the video or anything like that so the or did any of the officers testify about the length of time correct so there was an exhibit that would have showed it that was not the exhibit that was the exhibit that was not admitted to the motion to suppress hearing so that was not admitted before the court that would show the time period in between the end of the the invocation and the time at which the defendant was taken to the Sally port apart from that which is not included in the record there's a few different aspects that show there's a comment at one point that it was a short time or a brief period of time there's a comment where someone says it was a few minutes and then in its brief at the motion to suppress level the government stated two things they said it was at least 20 minutes and the government then also says that we know that the interview with the defendant where he invoked ended around 1032 that's what the government represented in its brief district court level they say we know that the defendant was then taken out of 1059 and so that's what the government's representation was at the district court level and I from I mean to the extent I can can reference the exhibit that was not put into evidence at the district court level those time those specific times the 1032 and the 1059 had in my opinion had to have been taken from that video that while it was not attached to the filing and was not admitted at the motion to suppress it was an explicit reference to times that are drawn from that exhibit and so the the two ways I believe regarding the statement I'll call it the girlfriend statement the two ways the government can prevail there is first of all this wasn't an interrogation that in order for Miranda to apply there has to be custody plus interrogation interrogation is defined in Ennis as a statement or action by law enforcement that they should know was reasonably likely to elicit an incriminating response and applying that definition to what occurred here especially after viewing the video I don't think you could find that it was reasonably likely to lead to or solicit an incriminating response that was also true in Johnson wasn't it so Johnson I would I would say is distinguishable than here Johnson from my reading what the court did was they said here's the course of statements that happened first law enforcement started they said do you want to know what will happen next then law enforcement gave a brief explanation of the criminal justice process I would follow which is somewhat similar to what occurred here and then they said that you know the reason the FBI is interested is because these are checks from a federally insured bank and immediately after that the response of the defendant responding to why the FBI is involved is all this trouble for just trying to get a little money and that was the incriminating statement that was admitted so the opinion goes on I mean first of all to clarify we don't have that that direct connection that was President Johnson between the statement by law enforcement that was there reasonably likely to solicit an incriminating response and did directly thereafter about the FBI and the check we don't have that in our case after that another difference is that in Johnson the court didn't say it didn't really reason through the interrogation analysis under Ennis what the court did was they as I mentioned set out this is the conversation that occurred and then they said often explanations of criminal rights like this may be employed by the government to be the good guy they said often and they said it may be employed by the government to be a good guy they didn't rule on a per se basis that this type of discussion between law enforcement and the defendant is inherently or is per se an interrogation and they didn't really give any further explanation as to their finding apart from saying that this was inappropriate under Miranda so you draw the conclusion that they must have found at some point that it was interrogation a few things we have here that they don't have that we have the video so we have a broader understanding of the of the interaction that occurred than the mere probably four or five lines and Johnson where they described the conversation what we also have is in Ennis when they talk about interrogation and a couple footnotes I think six and seven they explained that in evaluating interrogation it is not irrelevant the the question while it is an objective test they said it's not irrelevant the officers intent and they said it is not irrelevant the the officers knowledge of the susceptibility of the defendant to questioning here we know both of those two factors they weigh in favor of the government we know from agent Brady's testimony that it was not her intent to solicit an incriminating response it was her intent to be fair and to be respectful to the defendant she going to take into custody's I explain I'm taking them into custody she did it to be respectful not to be fair and in no way did she intend to solicit incriminating statements and that's clear from the record at the motion is press here which is docket entry 97 can can I switch you over to the second statement for a minute what did the officers or agents testify they said if anything to mr. Fonseca between the time they left the Sally port and the time he made the second set of statements about having a gun right so the testimony that they gave is that during that drive agent Brady's up front agent Littlefield's in the back filling out the booking paperwork they're listening to music there's no conversation because he's writing in the back they get on the highway from the Evanshire Police Department they get in express lane there's still no conversation as they get to be a few minutes away from the FTC here downtown the defendant initiates the conversation and this is clear from the motion to suppress hearing and from the testimony at the trial as well on the motion to suppress hearing docket entry 97 page 91 government asked who was the first person to make a statement about the they answered the defendant and this was in reference to the car conversation not to the Sally port conversation who was the first person to speak in that conversation the law and for the defendant or law enforcement the defendant what did what did he say that he didn't as I as I remember the transcript his first statement was not the statement about the gun right so it's I would say it's kind of there are inconsistencies there and if you look at the cross-examination by defense at the motion to suppress hearing they say then while he is driving or you are driving this is questioning agent Brady when you are you are driving is when he makes those statements about he knows he's a felon in possession and he carries a gun for protection in those statements yes that's when is it you were officer Litterfield advised him about Bridget Newman said to him and said about him in the Walgreens I don't recall who made these statements about the gun and then someone responded back and then they had a conversation about Bridget Newman so I think did they prepare reports I believe there were reports prepared about the conversation that was where they introduced at the suppression hearing or not I don't believe so so so what did the officers what's the clearest version of events about who the clearest version events is I believe the first one I just said where the the officer was asked who was the first person to make a statement about the investigation the defendant or law enforcement the defendant who is the first person to speak in conversation the defendant or law enforcement the defendant so I think it's clear that the defendant I know but that doesn't that doesn't answer everything it answers part of it but if he had said for example you know when did you guys start this investigation of me and stop there and they said we started it you know at whatever time last night he hadn't asked anything else they can't question him then and ask him why'd you have a gun right so I think to be clear first of all I don't think the facts come out that way no I know there is there is I know I know they don't thinking that is given I I think there's case law that would say that some sort of conversation bordering on questioning could occur during that time period because he reinitiated now couldn't be outright interrogation but if you look at a case like I believe it was Valdez where the defendant was in the car he was on the way to the MCC and he says what's going to happen to me now or where are we going something along those lines and then the the officer comes back to him and says we're going to the MCC he explains that the defendant says oh that's great that's good that's better in state and then he explains to him the the officer goes into and he says hey man was a drug case he's hey man we know you're just doing this because you need the money you know we know that you're just doing this you got to pay for your family and we're after the bigger guys so if you talk to your lawyer and you want to come cooperate then I think that makes sense for you to do something along those lines and then he immediately thereafter says yeah I was I was only doing it for the money I got a mortgage I got a wife I got a kid and that statement was held to be admissible so some sort of interaction as long as the defendant reinitiates it there is some sort of interaction that's allowed there and here I don't think we have to go that far because I think the defendant initiated with the statement that's at issue but if the court were to find you think he made that statement first that was the first thing he said in the car without any prompting as opposed to a precursor statement and then led to the admission so it may not have just been that there could have been some sort of conversation that or him saying some sort of lead-in statement and then that without the government giving any sort of any sort of question or course of statement but I do think is that the district court level they found that it was a spontaneous statement so that says to me that this wasn't something that was in response to law enforcement interaction or law enforcement questioning but that this was spontaneous and I think the spontaneity is a factual finding by the district court that is entitled to clear a deference here so I guess to recap is I think that statement came first the statement by defendant I think the district court said that and even if there was some sort of law enforcement interaction pursuant or following that conversation I don't think that that was sufficient to require or to be a Miranda violation and just to clarify I think these statements should be analyzed at least the first one should be analyzed independent because it occurred prior to the second one before any of those factors happened so I think we first have to analyze the girlfriend or the Sally port statement and then analyze the second statement which occurred I prior violation of Miranda occurring finally I'll say I think the any air and allowing these statements and denying the motion to suppress was harmless based on the evidence that's been put forth in our brief and in the record before the court and if there are no further questions I'll rest on you have one quick question for you certainly statement of Valdez was made to agent Brady is that the same agent Brady I do not believe is the same agent Brady just a coincidence I think so you're on all right thank you thank you very much the court I think it's important to look at these incidents that occurred individually because we're attorneys and judges and that's what we do and we think about analyzing cases in every which way possible but what's most important I would suggest is that you have to look at what happened in this case you have to look at the fact that at the police conduct beginning in the holding cell and continuing through the series of events because I don't think that it's certainly possible that the defendant would not have made those stop right there and with that the appellant will respectfully rest upon his brief unless the bench has any questions ok Mr. Kassid thank you very much before you head out Mr. Katz if I know that you were court appointed and we certainly do appreciate the work you've done not only for your client but on behalf of the court it's a public service and we certainly do appreciate it thank you very much